IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 4, 2024

**ROBERT BROOKS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 17-01422     Chris Craft, Judge

_____

**No. W2023-01492-CCA-R3-PC**

_____

The Petitioner, Robert Brooks, acting pro se, appeals the denial of his petition seeking relief from his convictions of reckless endangerment, aggravated robbery, two counts of aggravated assault, and one count of assault, for which he received an effective sentence of ten years, eleven months, and twenty-nine days confinement. State v. Brooks, No. W2020-01026-CCA-R3-CD, 2021 WL 4936969, at *1 (Tenn. Crim. App. Oct. 22, 2021), no perm. app. filed. As we understand the issues raised in the Petitioner's pro se brief, he contends (1) trial counsel was ineffective based on certain statements made during closing argument conceding the Petitioner's guilt; (2) trial counsel's failure to exclude an affidavit of complaint which contained alleged perjury; and (3) the trial court lacked jurisdiction to prosecute his case because the affidavit of complaint lacked probable cause.[1] Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Robert Brooks, Wartburg, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General; Steve Mulroy, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

---

[1] We have abbreviated the Petitioner's issues here for clarity, and they are detailed in full below. Additionally, the Petitioner argued several other issues in his post-conviction petition; however, they are not presented in this appeal and are therefore waived.

The Petitioner's convictions stem from an arrangement to purchase a car from Jeremiah Crotwell that was advertised on Craigslist. Brooks, 2021 WL 4936969, at *1. The Petitioner became angry when the car would not start after the sale was complete, and Crotwell refused to refund the money the Petitioner had paid for the car. The Petitioner shot at Crotwell as he attempted to leave in a different car with Xiomara Carmona and Jasmine Stewart, striking Crotwell in the back of his shoulder. The Petitioner then took Carmona's car at gunpoint, later abandoning it behind a convenience store. Id. Crotwell and Stewart identified the Petitioner as the perpetrator of the offenses shortly after the offense. Based on these facts, a Shelby County grand jury indicted the Petitioner for attempted second-degree murder, aggravated robbery, three counts of aggravated assault, and employing a firearm during the commission of a dangerous felony. The Petitioner was subsequently convicted by a jury of the lesser included offense of reckless endangerment, aggravated robbery, two counts of aggravated assault, and one count of assault. His convictions were affirmed on direct appeal. Id. The issues presented for review on direct appeal included the insufficiency of the evidence and whether the trial court erred in granting a challenge by the State under Batson v. Kentucky, 476 U.S. 79, 89-90 (1986). The Petitioner did not seek an appeal to the Tennessee Supreme Court.

On August 22, 2022, the Petitioner filed a timely pro se petition seeking post-conviction relief based on numerous grounds. On September 2, 2022, the post-conviction court entered an order appointing post-conviction counsel. On October 31, 2022, the Petitioner, acting pro se, filed an amendment to his petition, alleging additional grounds for relief. On December 15, 2022, the State filed a response to the petition and denied all asserted grounds for relief. At some point before the evidentiary hearing, the post-conviction court determined that the Petitioner could represent himself at the post-conviction hearing and appointed advisory counsel to assist him throughout the proceedings.

On July 6, 2023, the post-conviction court conducted an evidentiary hearing. In his opening statement to the court, the Petitioner explained that his ineffective assistance of counsel claim was based in part on his belief that "the detective swore that after reasonable investigation that she did not believe the alleged victim. . . . [a]nd the detective was the affiant of the complaint swearing that probable cause was falsely established[.]" The Petitioner believed that the detective also failed to provide certain reports to trial counsel. The Petitioner testified that "there was a fraudulent probable cause that was established through deception." In support, the Petitioner directed the court to the following portion of the trial transcript that referred to their exchange on the day of trial:

THE COURT: How did they violate your due process?

- 2 -

THE PETITIONER: Because I wasn't able to know my right in order to be able to assert it at the time when it was supposed to originally be asserted.

THE COURT: What right?

THE PETITIONER: Well, my right to due process of –

THE COURT: No. You have a right to due process, but how did they violate your due process right?

THE PETITIONER: They didn't follow – they didn't comply with the Tennessee Rules of Criminal Procedure.

THE COURT: Tell me what they didn't comply with?

THE PETITIONER: The affidavit.

THE COURT: Yes. Well, let me say this first. We follow the law here.

THE PETITIONER: Yes, sir.

THE COURT: This indictment that was returned against you if there is anything wrong with the affidavit it automatically cancels it. So, we're not proceeding on the affidavit. We're proceeding on the indictment. So, if the affidavit didn't have your name or didn't have a victim's name or had the wrong date or the wrong offense it makes no difference. That affidavit is gone. That handled your arrest in the jail. We're going by the indictment.

THE PETITIONER: That's actually what my question –

THE COURT: So, do you have another question? Because anything about the affidavit we're not even getting into because it was cured by the indictment. So, go ahead.

THE PETITIONER: Yes, sir. If the preparation of this case was done untrustworthy and fraudulently and the guy who basically put all the information that's supposed to be documented in this case he declared

that voluntarily and confessed that this is fraudulent, wouldn't it be denial of my due process –

THE COURT: No, sir.

The Petitioner claimed that counsel was ineffective because "she did not effectively assist in [his] defense." He claimed he did not commit the offenses as charged and believed his defense should have been "probable cause was false and the case was a fraud." The Petitioner agreed that he did not testify at trial. In support of the alleged "fraud," the Petitioner thought counsel should have argued that Crotwell was not shot and that the other two witnesses, Carmona and Stewart, lacked personal knowledge of the case. The Petitioner averred that counsel acted against his defense based on the following excerpts from her closing statement at trial:

Look at the video. You see Ms. Carmona come across the I think we ended up calling it a porch of the store. She's not near her car when the car is taken. Now, there is actual and constructive possession. Was she in constructive possession? That's something you have to ask yourself. But it also says constructive possession talks about being taken from her presence. So, she has to be present when it's being taken.

She's at the FedEx store by then. That's how we get to theft. Because either robbery count required being taken from a person. She's already at the FedEx store then we're at theft.

. . . .

And it goes kind of toward the criminal mind. Did [the Petitioner] have a criminal mind on [date of offense]? Let's look at his actions. We've just had gunfire up at the Kroger/FedEx store and there's a black guy holding a gun and a white guy running to the Applebee's saying I've been shot and the Bartlett Police are on their way.

Panicked. Adrenaline. Do you make good decisions? Do you think coolly and calmly and make good decisions when you've got all that adrenaline going - - everything is going? I need to get away. There's a running car right there.

Now, the reason I talk about a criminal mind [the Petitioner] – this occurred somewhere around noon, 12:30. By 4:15 the same day [the Petitioner] is voluntarily turning himself in Bartlett Police Station. This all goes back to

- 4 -

my two questions. Did [the Petitioner] intend to kill Mr. Crotwell? Did [the Petitioner] intend to rob Ms. Carmona? No and no. Thank you.

In making these statements, the Petitioner believed that counsel "destroyed" his defense by conceding that he shot Crotwell and committed theft.

Counsel testified that she had been practicing criminal law exclusively for over thirty years. In her representation of the Petitioner, counsel followed her general protocol of allowing the client to determine whether to proceed to trial, and she engaged in extensive negotiations with the State prior to trial. She met with the Petitioner at least seven times prior to trial, and there were fifteen court appearances. She represented the Petitioner at the general sessions level in Bartlett, Tennessee, which gave her an opportunity to cross-examine Crotwell at the preliminary hearing. She described her relationship with the Petitioner as "good" and "up and down[.]" The Petitioner would ask questions of counsel, and when her answer was "not what he was looking for," the Petitioner would get frustrated. Counsel said, "he would always come back to the table and work through it[.]" She recalled the "interaction" between the Petitioner and the trial court on the day of the trial and the Petitioner's concern that there was an "illegal indictment" and "illegal probable cause."

Counsel explained the Petitioner had a fundamental misunderstanding of probable cause and described it as follows:

Throughout this, [the Petitioner] . . ., from when we were in Bartlett General Sessions Court throughout, I think, today's hearing even, [the Petitioner], is stuck on the idea that there was not a proper probable cause at the outset of the case. And therefore, anything that flowed from that was wrong, incorrect, could not lead to an indictment, could not lead to a jury verdict or anything else. And he goes back.

Even today he continually used the term there was no probable cause or it was fraudulent probable cause or things of that nature. I repeatedly explained to [the Petitioner] that probable cause, even if he didn't agree with probable cause . . . there was probable cause down at the preliminary hearing.

And more importantly, that even if there had not been probable cause found at the preliminary hearing, the Grand Jury review did. And the fact that they returned an indictment resolved any issues that may or may not have lied with probable cause from the initial affidavit of complaint in the . . . onset of the case.

- 5 -

[The Petitioner] either didn't understand it, didn't want to accept it. And I think right before the trial, even inquired – made similar statements to [the trial court]. . . .

And I think [the trial judge] even explained, but in fact, once the Grand Jury . . . has returned an indictment those issues are resolved and that we were ready and was he ready to go forward to trial.

Counsel knew she was responsible for the legal decisions in the case, and she would have filed a motion had there been a legal issue with probable cause or the indictment. However, she refused to file a frivolous motion regardless of the Petitioner's misunderstanding.

Counsel investigated possible defenses in the case, and from her discussions with the Petitioner, she "could not ethically file a response to an alibi demand." Asked if she was aware that Crotwell had been inconsistent in his version of events, counsel said yes. She attacked his credibility at the preliminary hearing and trial. She believed she "effectively exposed" the inconsistencies between Crotwell's testimony at the preliminary hearing and trial. Based on her efforts, the jury returned a verdict on the lesser included offense of reckless endangerment, a Class B misdemeanor, instead of the charged offense of attempt to commit second-degree murder, a Class B felony. This also meant the Petitioner was no longer subject to the offense of employing a weapon during the commission of a dangerous felony.

Asked to explain her approach to the closing argument, counsel said:

And, having heard the testimony that came out during the trial, part of that trial strategy that develops, not only you prepare for it before trial, but you have to be able to modify that throughout the trial depending on how the evidence comes out before the jury.

And in this situation and the other information that I had to work with in making my arguments, I certainly did not put forth any facts or proof or evidence because I was an attorney. I'm not a witness. But in trying to show what the jury could surmise from the evidence they heard in argument, a theft of property would be much better than an aggravated robbery.

Counsel chose to argue theft as a lesser included offense of aggravated robbery because theft was a non-violent, property offense for which the Petitioner could receive probation. She acknowledged that this was a strategic decision and that the Petitioner wanted her to argue "that some third party jumped into the car and stole the car while all

of this was going on in the parking lot." She said the Petitioner also wanted her to argue a lack of probable cause. She chose not to argue the Petitioner's theories because they were not credible, given the evidence presented at trial. Counsel said she wanted to maintain credibility with the jury and believed she presented a plausible and viable defense. There was also "other information that would prevent [her] from perpetrating a fraud on the [c]ourt that limited what [she] could say." She later explained that based on her conversations with the Petitioner and her review of the evidence, the Petitioner fired shots during the incident, and "Crotwell was the victim of at least a ricochet shot and a shot in the back of his shoulder." Counsel did not believe she violated the Petitioner's Fifth Amendment right against self-incrimination in arguing the lesser included offense at trial, nor did she believe that her strategic decision to do so injured the Petitioner.

The post-conviction court issued a written order denying relief on September 18, 2023. We note the issues presented in the petition and argued before the post-conviction court are framed differently than the issues presented on appeal. The Petitioner argued before the post-conviction court that "[t]he conviction was based on a violation of the privilege against self-incrimination, in that his attorney wrongly stipulated to an incriminating false inference, that 'the [Petitioner] knowingly obtained the [victim's] vehicle when it was never fairly raised in the proof, and the scientific evidence was exculpatory.'" In ruling upon this issue, the post-conviction court noted that "although the [P]etitioner frames this issue as a 'violation of the privilege against self-incrimination,' the [P]etitioner gave no statement to the police and did not testify at trial.'" In denying this claim, the court reasoned as follows:

> [The Petitioner] is really complaining that his trial attorney, in trying to keep him from being convicted of the attempted murder charge, which would also mean a conviction for the employing a firearm during a dangerous felony charge, argued to the jury that this was only a theft. It was obvious from the proof in the trial that the [P]etitioner produced a gun, fired shots, ordered the two women to exit Ms. Carmona's car, and although all of the witnesses were either shot or running away from shots being fired and so were not watching the car, the car and the [P]etitioner disappeared at the same time and there was no testimony that any one else was at the parking lot on the scene to drive off with the car or pick up the [P]etitioner and drive him away. Since there was no proof that there was anyone else on the scene that could have taken the car, his attorney would have lost all credibility with the jury to have argued that a stranger stole the $2,500 car when the shots were fired knowing the police would be on the way.
>
> . . . .

In essence, the [P]etitioner testified at the hearing on this petition that he wanted his defense to be that this entire prosecution was a fraud, didn't ever happen, and that the State "tampered with the evidence." He offered no proof that he ever indicated to his attorney that he wished her to adopt this defense, and when she testified, he never asked his attorney anything on cross-examination about what he relayed to her in their meetings. His trial attorney left a distinct impression on this court that she might have been handicapped in certain defenses by the actual facts of the offense relayed to her, even though she clearly did not want to violate attorney/client privilege. "And I had other information that would prevent me from perpetrating a fraud on the [c]ourt that limited what I could argue." (internal citation omitted).

. . . .

This court finds that this strategy of trial counsel not only did not fail or hurt the [P]etitioner, but it helped the [P]etitioner's cause greatly. She argued to the jury that the shooting was reckless, not with an intent to kill, and that it was also not a robbery because the car was not taken from the presence of the victim, so it could only at most be a theft. As a result of his attorney's strategy and theory of defense presented to the jury, and her arguing a reasonable defense (instead of arguing that the case "was a fraud" with no proof available to support that defense) she had credibility with the jury, who listened to her theory and as a result the [P]etitioner was acquitted of Criminal Attempt: Second Degree Murder, and was only convicted of the lesser included offense of misdemeanor reckless endangerment. As a result of this misdemeanor verdict on Count One, the jury was also forced to acquit him of Count Five, Employment of a Firearm During the Commission of a Dangerous Offense, as reckless endangerment is not a statutorily listed dangerous offense[.]

No other issues presented in the petition and ruled upon by the post-conviction court are presented in this appeal. The Petitioner subsequently filed a timely notice of appeal, and this case is now properly before this court for review.

## ANALYSIS

At the outset, we note that the Petitioner's brief contains a statement of the issues; however, those issues are different than the issues presented in the argument section of his brief. We will address the issues as presented in the argument section, which, as written, are:

(1) The trial court erred in finding that defense counsel's representation did not harm the [P]etitioner but helped the [P]etitioner when [counsel] helped conceal evidence favorable to the defense and told the jury the [P]etitioner committed the alleged acts he was being tried for. The [P]etitioner openly declared before trial that his defense was that the case was invalid due to perjured accusations and counsel reasonably knew of the perjury yet, she adopted advocating and arguing the states perjured matter against the interest of the defense;

(2) The State's main witness Jeremian Crotwell, entered into an undertaking where the government required him to perjure with intent to defraud or harm the [P]etitioner, which might not have been done if the government had not paid him to do so. The perjured affidavit of complaint could not be cured by subornation, nor could it be cured by the grand jury relying solely on the complainants intentionally false information in the complaint. Binding this complaint over to the grand jury violated the due process of law and this issue could not be waived by the petitioner failing to challenge the complaint/arrest warrant bind-over attachment being signed in the general sessions court; and

(3) The trial court facilitated a malicious prosecution and abused its discretion when he declared that a lack of probable cause has nothing to do with a legal trial because the due process of law authoritates [sic] that a prosecution was not commenced; thus, the Bartlett Municipal court could not vest Shelby county criminal trial court with jurisdiction of an invalid case therefore relief and dismissal was available for the petitioner and by law shall have been granted.

As we understand the Petitioner's first issue, the Petitioner contends the post-conviction court erred in finding that counsel provided effective assistance when she conceded his guilt during the closing argument by telling the jury that he shot Crotwell and that he committed theft. The Petitioner believes that counsel should have proceeded with the defense theory of "fraud" and lack of probable cause.

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. Id. § 40-30-110(f). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010). The post-conviction court's findings of fact are binding on the appellate court

unless the evidence preponderates against them. Kendrick v. State, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of a witness, the weight and value of witness testimony, and the resolution of factual issues. Id. Questions of law and mixed questions of law and fact are reviewed de novo. Id. Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. Id.

The Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantees the accused the right to the effective assistance of counsel. Moore v. State, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. Kendrick, 454 S.W.3d at 457 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when clear and convincing evidence establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 370 (quoting Strickland, 466 U.S. at 694). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

"To gain assistance, a defendant need not surrender control entirely to counsel. For the Sixth Amendment, in 'grant[ing] to the accused personally the right to make his defense,' 'speaks of the assistance of counsel, and an assistant, however expert, is still an assistant.'" McCoy v. Louisiana, 584 U.S. 414, 421 (2018) (quoting Faretta v. California, 422 U.S. 806, 819-20 (1975) (holding that counsel who is aware of a defendant's express objections to any admission of guilt and then proceeds to concede guilt before the jury violates the defendant's right to effective assistance of counsel)). It is within counsel's purview to make decisions concerning trial management, such as "what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence." Gonzalez v. United States, 553 U.S. 242, 248 (2008) (internal citations omitted). In contrast, a defendant "has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal[.]" Jones v. Barnes, 463 U.S. 745, 751 (1983).

"Autonomy to decide that the objective of the defense is to assert innocence belongs in this latter category." McCoy, 584 U.S. at 422. As such, "a defendant has the right to insist that counsel refrain from admitting guilt." Id. at 417. In other words, "[w]hen a client expressly asserts that the objective of 'his defen[s]e' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." Id. at 423. "Because a [defendant]'s autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence[.]" Id. at 426. Rather, "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural,'" and a petitioner is entitled to relief when he or she can show that counsel "usurp[ed] control of an issue within [a petitioner]'s sole prerogative." Id. at 427. However, counsel's strategic choice to concede partial guilt "is not impeded by any blanket rule [in a capital case] demanding the defendant's explicit consent" when the defendant is unresponsive. Florida v. Nixon, 543 U.S. 175, 192 (2004); see also Broadnax v. State, No. W2018-01503-CCA-R3-PC, 2019 WL 1450399, at *6 (Tenn. Crim. App. Mar. 29, 2019); Smith v. State, No. M2020-00559-CCA-R3-PC, 2021 WL 1561396, at *11-12 (Tenn. Crim. App. Apr. 21, 2021).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Strickland, 466 U.S. at 690-91 and citing Baxter, 523 S.W.2d at 935-36 (recognizing that counsel should investigate all apparently substantial defenses); Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982) (emphasizing that a reviewing court should not second guess counsel's strategic and tactical decisions). Counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions," and "what investigation decisions are reasonable depends critically on such information." Id.

We agree with the post-conviction court and conclude that the Petitioner has failed to establish deficient performance or prejudice. This is not a situation in which counsel was made aware of the Petitioner's express objections to any admission of guilt and then proceeded to concede guilt before the jury. The record shows that counsel subjected the State to the adversary process by vigorously cross-examining the State's witnesses. However, there was indisputable evidence in the form of text messages between Crotwell and the Petitioner concerning the sale of the car, two surveillance videos showing the Petitioner and Crotwell, and three eyewitness identifications establishing the Petitioner's presence at the scene. Counsel's closing argument consisted of counsel challenging Crotwell and Carmona's credibility and methodically explaining the jury instructions and

the law to the jury. There was no explicit concession of guilt during closing argument, and counsel simply referenced facts adduced from the trial which supported the lesser included offenses.

At the post-conviction hearing, counsel explained that she chose this defense strategy to maintain credibility with the jury. She believed this was an effective strategy because the jury returned a verdict on the lesser included offense of reckless endangerment instead of attempted second-degree murder. Counsel was not asked if she had any discussions with the Petitioner concerning this approach. Asked by the Petitioner if she was aware that the Petitioner sought to pursue the case as a "fraud" and that Crotwell did not get shot, counsel replied, "I don't think that was your position because you were very adamant about the ricochet shot and some other issues. So our conversations did not – was not that you did not fire your gun, you did not shoot towards him." Importantly, although counsel was reluctant to breach attorney/client privilege, she said she was unwilling to perpetrate fraud upon the court by arguing the Petitioner's theories. Under these circumstances, we have no hesitation concluding that counsel made an informed strategic decision in making the statements at issue during closing argument. See, e.g., Savage v. State, No. M2019-01740-CCA-R3-PC, 2021 WL 1117031, at *11 (Tenn. Crim. App. Mar. 24, 2021) (holding that conceding charges supported by indisputable evidence while simultaneously contesting the most serious charges to be informed trial strategy). The record fully supports the determination of the post-conviction court, and the Petitioner is not entitled to relief.

Embedded as a sub-issue within the Petitioner's first claim is trial counsel's failure to provide the Petitioner with Crotwell's medical records. As we understand this claim, the Petitioner argues trial counsel withheld Crotwell's medical records which the Petitioner insists show that Crotwell was not shot and were therefore exculpatory. In denying this claim, the post-conviction court determined as follows:

> Although not raised in the petition, but testified to at the hearing by the Petitioner, was the Petitioner's complaint accusing the State of not producing exculpatory medical records that would have indicated that the victim was not shot. These records were in fact entered by the State as Exhibit #19 at the trial and the jurors were each given a copy to read. The records clearly indicate that the victim was indeed shot. One page of the records indicates "Unspecified open wound of right front wall of thorax without penetration of thorax cavity." The thorax is the area of the body between the neck and the abdomen. The victim was shot in the shoulder, not the thorax. Another page indicates "Musculoskeletal: Reports gsw to rt shoulder with small round wound noted high on ant chest near shoulder. Second small round wound noted to rt back shoulder post clavicular below scapula." This notation

- 12 -

describes the exit wound, after passage of the bullet created a scapular fracture. Another page of the records states that "there is a ballistic tract traversing from the posterial aspect of the right shoulder and a shallow course fracturing the right scapular spine and extending superior medially into the posterior cervically soft tissues." Another page stated "Indications: 18-year-old male status post gunshot wound. Another page stated "Discharged to home. Impression: Gunshot Wound to Chest (Wall), Scapula Fracture. Discharge instructions: Gunshot Wound.' To say that the medical records indicated the victim was not shot is absurd. Also entered as Exhibit #1 in the trial was a photograph of the victim in the hospital, and Exhibit #2 as a closeup photograph of the gunshot would still bleeding from the entrance hole created by the bullet. Just because the bullet entered and exited the shoulder without penetrating the thorax does not mean that the victim was not shot. The [P]etitioner's attorney had received a copy of the medical records, was not surprised by them when they were entered, and they were not in the least exculpatory. This additional issue concerning Exhibit #19, not raised in the petition but testified to by the [P]etitioner, is likewise found to be without merit.

This court finds that the [P]etitioner has shown no proof of any exculpatory evidence that was not received by the State that would have raised any probability that they would have chosen not to prosecute the petitioner, who was identified by several witnesses, shot the victim in this case and committed aggravated assault on other victims with a gun. This allegation is found to be without merit for lack of any proof to support it.

The record supports the determination of the post-conviction court. The Petitioner failed to offer any proof in support of this issue. Counsel testified at the post-conviction hearing that she had received and reviewed the medical records with the Petitioner prior to trial. She did not provide the Petitioner with a copy of the medical records because they were voluminous and "probably out of an abundance of time." In relation to closing argument, counsel explained that she interpreted the medical records "not to exclude . . . there was a bullet wound. There was a shot." However, she was unsure of the severity of the bullet wound which is why she argued reckless endangerment in closing argument. Based on the same reasoning set forth above, we conclude counsel made an informed strategic decision regarding the statements at issue in closing argument. The Petitioner has failed to establish deficient performance or prejudice. He is not entitled to relief.

As to the remaining issues presented on appeal, they were not contained in the petition and not argued at the post-conviction evidentiary hearing. The order of the post-conviction court also does not contain a ruling addressing these issues. Under these

circumstances, we conclude that issues two and three are waived.  Holland v. State, 610 S.W.3d 450, 458 (Tenn. 2020) (issues neither presented in the post-conviction petition nor ruled upon by the post-conviction court are waived).  Accordingly, the Petitioner is not entitled to relief.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE